**L'ENFANT PLAZA NORTH, INC.,** a corporation, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA REDEVELOPMENT LAND AGENCY, Neville Miller, Chairman, District of Columbia Redevelopment Land Agency, National Capital Planning Commission, Elizabeth H. Rowe, Chairman, National Capital Planning Commission, District of Columbia, and Walter E. Washington, Commissioner of the District of Columbia, Defendants.**

**David Nassif Associates, Defendant Intervenor.**

**Civ. A. No. 1533–68.**

United States District Court
District of Columbia.

June 5, 1969.

Thomas A. Flannery, U. S. Atty., for the District of Columbia; Joseph M. Hannon and Lawrence N. Schinnick, Asst. U. S. Attys., Ralph Werner and Stephen Weissman, Washington, D. C., for defendants District of Columbia Redevelopment Land Agency, and others, for the motion.

Matthew J. Mullaney, Jr., Assistant Corp. Counsel for the District of Columbia, and Walter E. Washington, Commissioner for the District of Columbia, for the motion.

E. Tillman Stirling, Washington, D. C., for the intervening defendant David Nassif, for the motion.

Kenneth Wells Parkinson and Daggett H. Howard, Washington, D. C., for plaintiffs, opposed.

HOLTZOFF, District Judge.

The question presented for decision in this case is the construction of a restrictive clause contained in the urban renewal plan for the Southwest Urban Renewal Area in the City of Washington. Specifically, the question is what is the meaning of the phrase "accessory uses" in connection with office buildings.

This action is brought by property owners, whose property surrounds or adjoins the specific area to which the restriction applies. The defendants are certain governmental authorities and the purpose of the action is to set aside the interpretation and construction placed upon the restriction by the defendants. The owner of the property affected by the restriction has intervened as an additional party defendant. All of the defendants move for summary judgment on Count 1 of the complaint, which presents the problem to which reference has just been made.

A brief summary of the legal and factual background is needed in order to understand the problem that the Court has to solve. The District of Columbia Code contains an elaborate legal and administrative scheme for the rehabilitation of blighted and deteriorated areas in the City of Washington. These statutory provisions are found in the District of Columbia Code, Title V, Section 701, *et seq.* It is provided that any plan for the rehabilitation of any blighted or deteriorated area must be prepared by an agency known as the National Capital Planning Commission, which in turn submits the plan to the Board of Commissioners of the District of Columbia for approval. The administration and carrying out of the plan is then entrusted to the District of Columbia Redevelopment Land Agency, which is given very broad powers. The District of Columbia Redevelopment Land Agency is composed of five members, two appointed by the President and three by the District Commissioners, all subject to confirmation by the Senate. The agency is a body corporate. It has the power to own property, to sue and be sued. It has power in carrying out any plan to acquire property by purchase or eminent domain and in turn to sell or lease property for the purposes of any plan entrusted to it for execution.

Pursuant to these statutory provisions an urban renewal plan was adopted for what is known as the Southwest Urban Renewal Area on April 5, 1956, by the National Capital Planning Commission and approved on November 30, 1956, by the Board of Commissioners of the District of Columbia. The Redevelopment Land Agency then undertook, as was its duty, to carry out the details of the plan and under its aegis a blighted, deteriorated, woebegone area in the City of Washington is being transformed into a high-class, residential and business section of the city.

This plan was amended on a number of occasions and one of the amendments relates to one square contained in the area known as Square 465. It is provided that in Square 465 all buildings and premises shall be limited to offices

for governmental, professional, institutional or commercial use and accessory uses such as employee restaurants and off-street parking necessary to serve the primary uses. The owner of Square 465, to whom the land has been conveyed by the Redevelopment Land Agency, proposes with the permission of the agency, which has been granted, to use some of the space in the building to be erected by him for the following commercial uses: cafeteria, restaurant, drug store, bank, post office and savings and loan institution.

As has been stated, this suit is brought by owners of surrounding and adjoining property to enjoin the use of any part of Square 465 except for the two uses enumerated in the amended plan: namely, employee restaurants and off-street parking. The defendants are the District of Columbia Redevelopment Land Agency and its chairman, the National Capital Planning Commission and its chairman, and the District of Columbia and the present Commissioner of the District of Columbia. As has already been stated, the owner of Square 465, David Nassif Associates, has intervened as an additional defendant. It is claimed that the broad interpretation of the words "accessory uses" placed upon that phrase by the Redevelopment Land Agency is erroneous and should be set aside and the proposed uses enjoined.

■ The defendants concede that the plaintiffs have a standing to sue. Their interest obviously is that they propose to lease space in the buildings that they have erected or intend to erect for commercial purposes and they feel that the rental value of the space will be diminished as a result of competition that might arise from similar establishments in Square 465. The Court *sua sponte* raised the question whether the plaintiffs had a standing to sue. The Court did so because the principle of standing to sue is fundamental in the separation of powers between the Legislative, Executive and Judicial Branches of the Government. The Judicial Branch may consider only actual cases and controversies.

It may not act as a supervisor or censor of the activities of other branches of Government. Otherwise, the tri-partite division would become transformed into a division of government wherein the Judiciary would be supreme over the other two branches. The Court has come to the conclusion that the question of standing to sue is presented in this instance in a different form than is frequently confronted in actions brought by individuals against Government agencies. The restrictions contained in the plan on uses to which property involved may be put are specifically stated to be covenants running with the land in favor of certain groups of persons, among them *owners of adjoining or surrounding property*. Consequently, they have an interest in enforcing what is deemed to be a covenant running with the land, and the Court, therefore, reaches the conclusion that they have a standing to sue.

■■ This brings us to the specific question how the phrase "accessory uses" should be constructed. It needs no citation of authorities, in fact it would be an unnecessary exhibition of learning to cite authorities for the elementary proposition that an agency charged with carrying out a statute, and this urban renewal plan has the effect of a statute, has also the authority to construe the statute. The courts give weight to its construction. In fact, if the construction is reasonable, the courts will adopt it and will not determine the question of interpretation *de novo*. It has been said that if there is a rational basis for the ruling or decision of an administrative agency, that ends the matter so far as the courts are concerned.

It is necessary to consider the question with these principles in mind. The ruling of the Redevelopment Land Agency was contained in a letter dated May 1, 1968, written by Neville Miller the chairman of the agency, to Daggett H. Howard, one of the counsel for plaintiffs. That letter states in part:

"It is the Board's view that the phrase, 'accessory uses, such as em-

ployee restaurants and off-street parking necessary to serve the primary uses', contained in the Urban Renewal Plan for Southwest Project C does not restrict the non-office uses on Square 465 solely to employee restaurants and off-street parking. The specified uses (employee restaurants and off-street parking) are merely illustrative of the types of accessory uses permissible on the site. While other uses are permissible, it is obviously difficult to catalog an exhaustive list of them.

"We assume, from the phrasing of your question, that you interpret the cited language as restricting non-office uses solely to employee restaurants and off-street parking. If this had been the intent of the public bodies which adopted and approved the Urban Renewal Plan, their purpose could have been accomplished by merely omitting the words 'accessory uses such as' or by adding the words 'limited to' after the words 'accessory uses'. Your interpretation of the phrase renders these words meaningless and in our opinion is too restrictive.

"It is the Agency's interpretation that the quoted language contemplates a range of uses which—as the word *accessory* is defined in the Zoning Regulations of the District of Columbia, May 12, 1958, as amended—are subordinate to and customarily found with the primary office uses and which serve the day-to-day needs and convenience of the tenants, employees and visitors of the primary office uses."

In further answer to questions propounded to the agency, the chairman expresses the view that uses for restaurant, cafeteria, drug store, gift shop, women's and men's specialty shops, camera and photographic supplies, candy store, flowers, jewelry, books and stationery, barber shop, beauty salon, valet and laundry, optometrist, watch repair, ticket agency, travel agency, health facility, bank, savings and loan association, stock brokerage, auto rental agency and post office are all permissible uses as accessories.

He excludes office furniture and equipment.

*Accessory use* is defined in the Zoning Regulations of the District of Columbia, Article XII, Section 1202, as "a use customarily incidental and subordinate to the principal use and located on the same lot therewith."

It is true that Chairman Miller points out in his letter that his decision is not final but represents the agency's opinion alone and that the District of Columbia Government has the final authority and responsibility for determining that the plans of a redeveloper comply with the Urban Renewal Plan. However, an affidavit by William N. Dripps, Acting Director of the Bureau of Licenses and Inspections of the District of Columbia, states that ordinarily if the Redevelopment Land Agency notifies the Bureau of Licenses and Inspections that the proposed use does conform to the Urban Renewal Plan the Bureau would issue a Certificate of Occupancy for such use provided all other Bureau criteria are met.

■ Taking this affidavit together with the letter of Chairman Miller, the conclusion follows that there is a definitive ruling on the part of the appropriate administrative officials construing the restrictive clause broadly in the manner already stated. Consequently, all parties concede that there is an actual controversy, that all administrative remedies have been reasonably exhausted and that consequently the issue is mature for decision by the courts.

■ Whether this Court would construe the restrictive clause in the same way in which it has been construed by the administrative agency is obviously immaterial. Nevertheless, the court may observe that it agrees with the views of the Agency that the two accessory uses mentioned in the restriction are obviously not exclusive, but merely illustrative and that, therefore, other similar commercial and service establishments should be deemed permissible. The question is whether the administrative interpreta-

tion is reasonable and whether the clause is susceptible of such construction. The Court answers the question in the affirmative. The Court has in mind, for example, that it is a matter of common knowledge that office buildings in this city of the larger size frequently contain stores on the ground floor drawing their patronage to a considerable extent from tenants in the building and their em‑ployees, visitors and other persons as well.

The Court is unable to reach the conclusion that there is anything unreasonabel or erroneous in the interpretation placed upon the clause by the Redevelopment Land Agency, and in that event this ends the function of the Court. In view of these considerations the Court sustains the interpretation placed upon the clause by the Redevelopment Land Agency as a reasonable interpretation and will grant the defendants' motions for summary judgment as to Count 1 of the Complaint, Counts 2 and 3 not being before the Court at this time.

Counsel may submit an appropriate order.